All right. Ms. Sullivan, please proceed. Yes, your honor. May it please the court and counsel, my name is Molly Sullivan. I'm an assistant federal defender with the Eastern District of Arkansas and have the honor of representing Mr. Charles David Chastain here before you today as I represented him at trial in this matter in the district court. This case did proceed to trial and our position is that on counts one, two, and three, the evidence was insufficient to sustain convictions of guilty. In addition, the jury instructions were misstated for each of those counts and in turn, because of the lack of sufficiency of evidence and the misstatement of what the jury needed to find in order to as to all of the elements of each of the offenses for which he was charged, those jury instructions and that misapplication and misstatement require reversal of the convictions and vacation of the sentence in this case. As far as counts one and two are concerned, Mr. Chastain was charged with a Hobbs Act violation for allegedly using his authority and accepting gifts or an ATV and firearms in exchange for some promise to do an official act. But the testimony at trial was that Mr. Chastain accepted an ATV in exchange for a cash payment. Counsel, in terms of counts one and two, isn't the y'all quote, you know about y'all, isn't the y'all quote, isn't that enough evidence on one and two and you want to spend your time on count three? Surely you all have evidence. Y'all take care of me. I'll take care of y'all. Y'all don't think stupid. Y'all are golden. Just don't do anything about me, knowing about it ahead of time. My goodness gracious. You know their situation, his situation. That's, I can understand that interpretation of that quote, Your Honor. However, there was an actual exchange of money. In fact, Mr. Chastain intended and negotiated originally saying I can give you $6,500 a firearm or $6,500 an exorbitant amount of money, in my opinion, for a firearm, but I'm not a gun person. In exchange for this ATV, he ended up paying him cash for the ATV, just like any other business transaction. He accepted the stolen property, which of course might have been an offense under state law, which was not prosecuted. The firearms also, there was an exchange. There was an attempt to be an exchange or I think that the interpretation of that text message, Y'all take care of me. I'll take care of y'all. That can be, that's ambiguous and open to a lot of different interpretations of what that might have meant. Maybe that's why we have juries counsel. You're, you're, you're had more jury trials than I have, but, but that's why we have juries. You want to talk about count three, you're at six minutes. Count three. Yes, Your Honor. I can talk about count three. So count three charged him with the acceptance of these firearms with the purpose to commit a felony count three. And I did not argue this at the trial court level, unfortunately, hindsight always 2020, but that count requires, it looks like on the case law, and this is an issue of first impression with this circuit that the transfer of firearms must be intrastate and not interstate. And so it's not as if Mr. Chastain went to Missouri with the intention of bringing guns back to bring them to Arkansas. These guns were given to him in Arkansas. There is no interstate connection here. And what that essentially intends to do if the court were to interpret the statute that way is just to expand the commerce clause and criminalize firearm conduct or possession of firearms no matter how far back a firearm was manufactured outside of a state. Additionally, are you familiar with the Scarborough case of the Supreme Court? No, I'm not certain, Your Honor. Okay. No, no, no, no. If you're not, it was barely mentioned in the briefs. I get it. But I do think the Scarborough case acts like that it doesn't really matter on those specific words by the time you're done reading it. Is it true that only one circuit has required a contemporaneous interstate nexus? Your Honor, I believe that one circuit has as well as the district court. Second circuit. Second circuit. Yes, Your Honor. And the others have gone the other way, right? Yes, Your Honor. And no requirement with this circuit. So issue of first impression here. Further, with regard to count three and the firearms needing to be stolen, that being a firearm actually be stolen. These firearms not stolen. They were property of the FBI. That testimony was uncontroverted at the trial court level. In fact, the government elicited that testimony themselves, meaning that under Trevino, Fifth Circuit case again, no Eighth Circuit case law. Unfortunately, Trevino said that for 924B convictions, all of the elements of the underlying offense for which that 924B conviction or charge rests, those elements must be proven beyond a reasonable doubt. And since the firearms at issue in this case weren't stolen, regardless of whether or not Mr. Chastain thought they were, they are simply not. That means that he cannot. Counsel, doesn't even Trevino say what's important is your client's intent, not what the truth really is. But if your client's intent is to get stolen weapons, that that's enough. Your Honor, I don't necessarily agree with that point. I think because of the way that the statute for 922J is listed, that the firearms actually must be stolen. The intent element is if the 922J said he has to, the person must believe that they are stolen, that would be a different situation here. But because the element itself is that the firearms are stolen, that negates that necessity for intent to be proven. They must actually be stolen. That is our interpretation of that case and of that statute. Now, he was charged with attempt here, right? Yes, Your Honor, I believe that is correct. He was attempted to... Usually on, this is a law professor question, usually on factual impossibility. Because you attempted it and it can be factually impossible, but you really meant for it to happen. What do you think about that law professor point? I disagree with that law professor point. I think that in order for that, of course I do, I think in order for there to be this offense, those elements must be met. And so regardless of what you're attempting or what your intent may be, those elements are still important. And as this circuit is held, the firearms must be stolen under 922J. That's not controverted. That is not an issue. And so under 924B, if you attempt or intend to take, to commit that offense, you still have to complete the underlying, or the underlying elements of that offense must be met and must be proven beyond a reasonable doubt. And since the firearms weren't stolen here, we believe that count must be vacated and that conviction reversed. Ms. Sullivan, did you wish to retain any rebuttal time? Yes, Your Honor, I would like to. Thank you. All right. Your Honor, John Rafe White for the United States. May it please the court. And I'm glad to know that at least starting out of the gate here, count three is what we're talking about. And I think that I had kind of thought about the Scarborough case myself. It actually was a 1977 Supreme Court case. It follows on the heel of a case that's really discussed more in the briefs, and that was Barrett. And Barrett gave as an example, it was not dealing with the 1202A or 922A3 or 922J or 922K. It used those three as a comparison to the statute that it was actually interpreting. And what seemed important to me about the way that Scarborough, which was very next year after Barrett, same Supreme Court, referred back to Barrett was it talked about how 922A3 Congress was really clear about the interstate nexus. If you bought a gun in another state, then you had it in this state. It was really clear. In 922J, the court said, the Congress said, if you get a gun which is moving as or which is part of or which constitutes interstate or foreign commerce, it was really clear that Congress meant that interstate connection. 922K, which is also cited in Barrett, and 924B use a very similar formulation for the interstate nexus component, but no court has actually dealt with 924K, 924B, or 922K. And so in Scarborough, the court referred to 922J, but neither of the other two that Barrett did. And I think that that's because 922A3 and 922J were really clear, but 922K was not, which is the same formulation as 924B. And it is not clear that 924B is a strictly interstate commerce statute. And it's particularly, my hope is that the court actually finds that the defendant waived this below because they did address 924B at the jury instructions conference, and they did not raise this issue. And under our court's precedent, if under a Rule 29, in a Rule 29 scenario, when you're making a motion for judgment not or judgment of acquittal, if you don't raise that specific thing, but you did raise other specific ones, then you waive that. What about the possibility of plain error review? Even if that doesn't apply, if you take it on plain error, there's no error that's plain in this case. The Scarborough case, my favorite quote from Scarborough was when they were saying, while it's true Congress did not choose the precise language, and I'll say used in 922H or 922A3 to indicate a present nexus with commerce is not required, it also didn't use the 922J language. So the maxims of what's left in or what's left out, as Scarborough said, don't help us in this case. And what the defendant then turns to is the legislative history that was discussed by the Arizona court and also by the Supreme Court about this act that was passed, I think it was 1968, the Gun Control Act. And the part of the legislative history that the court chose does actually give an example of out-of-state purchases of firearms being used for in-state crime. But if you go past that that was quoted, the Congress, whenever in the very same, the very next paragraph, starts talking about, and another problem with these guns is that they're imported. They're imported from foreign countries. They're imported. And so what's not clear from the legislative history is that this statute dealt only with crossing the state line and coming back in town to commit a crime. It really was dealing with gun crime itself, gun crime as a blight on our society. And it's hard to think, especially in light of the full legislative history, that the Congress would have said, if you're going to buy a gun with an intent to commit a crime and you go out-of-state to do it, that's a crime. But if you buy a gun at the Walmart in order to go commit a crime at the liquor store next door, that's not a crime. That just doesn't comport with all the discussions of the purpose of the Gun Control Act and these 922 Offenses and 924B. So the courts have talked about it. It's really a question of timing of the nexus, not necessarily the fact of the nexus. 924B requires a nexus. And so because it's not clear, because the position of this case before this court right now is that there was no objection to this, no opportunity for the parties to brief it, no opportunity for the district court to address it, that if it's anything, it's plain error review and it's not plain error based on the state of the law at the time that Mr. Chastain's case was tried. And with respect to the question of whether or not the firearm had, in fact, to be stolen for Mr. Chastain to have been convicted of it, even Trevino is, on this point, is in favor of the government's argument that Trevino said it's an inchoate offense. It's the intent of the person at the time that he made the purchase or made the acquisition. And Mr. Chastain, the facts as he believed them to be were that the firearms he was receiving were stolen. That's what he believed at the time that he completed the transaction. And I submit to the court that that's the measure of what should be the guilty mental state and the guilty conduct under 924B. Mr. White, would you address the jury instruction on the extortion counts? I take it the argument there is that the jury instruction misuses his public property and did not use the quid pro quo language counsel argues was required. I think it's in exchange for or in return for official acts. Your Honor, I will. And I'm going to start with an apology. When I was briefing this, I didn't find this particular case. But when I was preparing for it, I did. And this court in 2014 in U.S. v. Kalb, K-A-L-B, 750 F. 3rd, 1001, actually dealt with the quid pro quo question. It said Kalb asserts that the government failed to prove explicit quid pro quo, citing the Supreme Court's decision in McCormick. However, the court in that case explicitly limited its holding to elected officials who accept illegitimate campaign contributions. And so this court has a decision on that question that controls. The 3rd Circuit is in agreement with the 8th. The 2nd Circuit says you have to say the magic words. But in this case, we used the model instruction from the 8th Circuit. The facts clearly proved that he committed the offense. And there was no objection or no request by the defense below for the quid pro quo language to be included in the instruction at the time of trial. So even if Kalb doesn't control, there's no plain error of the district court having used our model instruction with the overwhelming proof that we put on at trial. I would ordinarily say unless the court has other questions, I'll surrender the balance of my time. But I think my time is up. So thank you, Your Honors. All right, Ms. Sullivan, your rebuttal? Yes, Your Honor. With regard to the Kalb case, I know that Mr. White says that it came out in 2016, but so did the McDonnell case, which discusses the quid pro quo jury instruction. And so unsure about the date in which Kalb was McDonnell may supersede that. With regard to all the arguments for jury instructions, the plain error review, plain error just means that it's something that the error is obvious. And as this court found 12 days ago in United States v. Seneca, plain error affects substantial rights when there's a reasonable probability that the result would have been different otherwise. And that language comes from the 1993 Supreme Court case of Olano, where this error seriously affects the fairness or integrity or public reputation of judicial proceedings. And so had the court instructed the jury regarding the quid pro quo element that's required in McDonnell, as well as the interstate versus intrastate nexus argument for 924B and that the firearms must have been stolen, the jury would have found completely differently, or there is a likely probability that they certainly would have. And so we believe that though we did not raise it, this court can review those issues as plain error and find that they substantially affected Mr. Chastain's rights, and thus the conviction should be vacated and his should be released from prison. Thank you, Ms. Sullivan. Thank you also, Mr. White. The court appreciates both counsel's participation in this morning's argument. We thank you for joining us in our virtual forum and appreciate the effort that you put in to help us resolve the issues in this case. We'll take the case under advisement and render a decision in due course.